# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DIAMOND CONSORTIUM, INC., DAVID BLANK | § § § § § § § § § § § | |
| | | Civil Action No. 4:16-CV-00094 |
| v. | | Judge Mazzant |
| BRIAN MANOOKIAN, CUMMINS MANOOKIAN, PLC, THE DALLAS MORNING NEWS, INC, BRIAN CUMMINGS, MARK HAMMERVOLD, HAMMERVOLD, PLC | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Mark Hammervold and Hammervold, PLC's Amended Motion to Dismiss (Dkt. #137). Having considered the pleadings, the Court finds that the motion should be denied.

## BACKGROUND

Plaintiff Diamond Consortium, Inc. d/b/a The Diamond Doctor ("The Diamond Doctor") is a retailer and wholesaler of diamonds and other jewelry. Plaintiff David Blank ("Blank") owns The Diamond Doctor (collectively, "Plaintiffs"). Plaintiffs allege that Defendant Brian Manookian ("Manookian") and his law firm, Defendant Cummings Manookian, PLC ("Cummings Manookian") engaged in a scheme to defame and extort Plaintiffs. According to Plaintiffs, Manookian created websites and distributed fliers falsely accusing The Diamond Doctor of having committed "diamond fraud" and "cheating customers through the sale of over-graded diamonds." Plaintiffs allege that Manookian threatened Plaintiffs with several diamond over-grading lawsuits, unless Plaintiffs retained Cummings Manookian as counsel and paid a $25,000 monthly retainer fee for a period of 120 months, totaling three million dollars. Plaintiffs state that Manookian told Blank that if Cummings Manookian represented The Diamond Doctor, Manookian would be

conflicted out of continuing any negative advertising campaigns. The Diamond Doctor did not retain Cummings Manookian. Plaintiffs allege that Manookian continued to defame Plaintiffs utilizing websites, Facebook posts, YouTube videos, fliers, and door hangers accusing Blank and The Diamond Doctor of being "fraudsters" and "stealing customers cash." Plaintiffs allege that Manookian has threatened several other jewelers with similar "smear campaigns" to extort the jewelers into paying Cummings Manookian large retainer fees.

Plaintiffs further allege that Defendant Mark Hammervold and his law firm, Defendant Hammervold, PLC (collectively, the "Hammervold Defendants") "are necessary to Manookian's illegal acts . . . because Manookian solicits clients to sue the targeted jewelers and then refers those cases to Hammervold and/or Hammervold, PLC to prosecute, thereby avoiding the appearance of a conflict when Manookian subsequently enters into 'engagement agreements' to represent the targeted jewelers as part of his extortion scheme." Plaintiffs allege that Cummings Manookian, and the Hammervold Defendants are members of an association-in-fact enterprise because they "together function as a unit with a common purpose: extorting millions of their victims." Plaintiffs bring claims against the Hammervold Defendants for violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c) (the "RICO Act") and for civil conspiracy.

On October 26, 2016, Plaintiffs filed a Consolidated Amended Complaint (Dkt. #131). On November 9, 2016, the Hammervold Defendants filed the pending amended motion to dismiss (Dkt. #137). On December 9, 2016, Plaintiffs filed a response (Dkt. #147). On December 23, 2016, the Hammervold Defendants filed a reply (Dkt. #151). On December 30, 2016, Plaintiffs filed a sur-reply (Dkt. #153).

**LEGAL STANDARD**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each

claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims

or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

**ANALYSIS**

*RICO Act Claims*

To state a claim for a RICO Act violation, Plaintiffs must allege each of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988) (citing 18 U.S.C § 1962(c)). The Hammervold Defendants move for dismissal pursuant to Rule 12(b)(6) arguing Plaintiffs have not pleaded sufficient facts showing the requisite predicate acts of racketeering activity and the existence of a RICO Act enterprise. The Court finds Plaintiffs have pleaded sufficient facts to state plausible claims of Rico Act violations.

*Requisite Predicate Acts of Racketeering Activity*

The Hammervold Defendants first argue that Plaintiffs have not pleaded the requisite predicate acts of racketeering activity required for a RICO Act claim. "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003). Plaintiffs allege that Manookian engaged in a pattern of racketeering activity consisting of violations of four federal criminal statutes: 18 U.S.C.§ 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1951 (the Hobbs Act); and 18 U.S.C § 1953 (the Travel Act). Plaintiffs have sufficiently pleaded plausible facts to state a claim of mail

4

fraud, wire fraud, and violations of the Travel Act and thus have sufficiently pleaded a pattern of racketeering activity.

*Mail Fraud, Wire Fraud, and the Travel Act*

"The mail fraud statute applies to anyone who knowingly causes to be delivered by mail anything for the purpose of executing any scheme or artifice to defraud." *United States v. Whitfield,* 590 F.3d 325, 355 (5th Cir.2009) (internal citations and quotation marks omitted). Similarly, wire fraud involves the use of, or causing the use of, wire communications in furtherance of a scheme to defraud. *United States v. Stalnaker,* 571 F.3d 428, 436 (5th Cir.2009). "Once membership in a scheme to defraud is established, a knowing participant is liable for any wire communication which subsequently takes place or which previously took place in connection with the scheme." *Id.* The Travel Act prohibits travel in interstate commerce or use of interstate facilities to promote or carry on certain unlawful activities. 18 U.S.C. § 1952.

Plaintiffs allege that Manookian engaged in "an attempt to defraud through a systematic scheme of targeting The Diamond Doctor through a barrage of false, misleading, and harassing publicity on the internet, social media, email, and fliers" (Dkt. #131 at ¶ 103). Plaintiffs allege that "Manookian participated in the fraudulent scheme . . . knowingly, willfully, and with specific intent to generate fear on the part of The Diamond Doctor such that The Diamond Doctor would execute the [engagement agreement] and pay Manookian $3 million." (Dkt. #131 at ¶ 105). Plaintiffs also allege that the Hammervold Defendants knowingly accepted referrals of cases to prosecute against The Diamond Doctor and other targeted jewelers as part of Manookian's scheme to extort jewelers. Plaintiffs allege the Hammervold Defendants are a necessary part of the scheme because they allow Manookian and his firm to avoid an appearance of conflict when they enter into engagement agreements with the targeted jewelers.

Plaintiffs have sufficiently alleged that the Hammervold Defendants participated in a scheme to defraud Plaintiffs of three million dollars. Defendants point to *Manax v. McNamara*, 660 F. Supp. 657 (1987) to argue that Plaintiffs have not pleaded sufficient facts to support a claim for mail and wire fraud or a violation of the travel act. In *Manax*, a defendant lawyer similarly initiated an investigation into plaintiff, allegedly spread defamatory information regarding plaintiff, and referred medical malpractice claims to a co-defendant lawyer to file against plaintiff. In that case, the court found that the alleged scheme "when reduced to its essentials, appears to be one to damage the reputation of [plaintiff] and is in no way a 'fraud' on his tangible or intangible rights." *Id.* at 660. In that case, there was no allegation, as there is here, that the scheme intended to defraud plaintiff of his property. Here, Plaintiffs have sufficiently pleaded that Manookian's scheme had the express purpose of coercing Plaintiffs into retaining Cummings Manookian and paying Manookian three million dollars. Plaintiffs have also sufficiently alleged that the Hammervold Defendants were a necessary part of this scheme to allow Manookian and his firm to avoid an appearance of conflict when they entered into engagement agreements.

Plaintiffs have pleaded sufficient facts to state a claim of the requisite predicate acts of racketeering activity required for a RICO Act claim.

*Hobbs Act*

Although Plaintiffs have sufficiently pleaded requisite predicate acts of racketeering activity required for a RICO Act claim, Plaintiffs have not pleaded a claim for a violation of the Hobbs Act. "[T]he extortion provision of the Hobbs Act . . . require[s] not only the deprivation but also the acquisition of property." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404 (2003) (noting that acts of interference and disruption that shut down a clinic that performed abortions "did not constitute extortion because petitioners did not 'obtain' respondents'

6

property . . . To conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion.").

Plaintiffs' complaint states "Manookian *attempted* to obtain The Diamond Doctor's property (i.e., $25,000 per month for 10 years or $3 million)." (emphasis added). However, Plaintiffs do not allege that Defendants actually obtained Plaintiffs property, even if their actions were disruptive to The Diamond Doctor's business. Plaintiffs' have not stated a Hobbs Act claim. Plaintiffs' Hobbs Act claim cannot serve as requisite predicate acts of racketeering activity required for a RICO Act claim

*Existence of a RICO Association-In-Fact Enterprise*

The Hammervold Defendants next contest the existence of a RICO association-in-fact enterprise. RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C § 1961(4). Plaintiffs allege that Cummings Manookian and the Hammervold Defendants are members of an association-in-fact enterprise. An association-in-fact enterprise "(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization, and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015). "A pattern of racketeering activity does not, by itself, necessarily show that an enterprise exists . . . But the evidence establishing the enterprise and the pattern of racketeering may 'coalesce.'" *Id.* (citations omitted). "An association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical

7

structure or a 'chain of command' . . . members of the group need not have fixed roles." *Boyle v. United States*, 556 U.S. 938, 948 (2009).

The Hammervold Defendants argue that "there is no allegation that shows the existence of an enterprise or an association-in-fact, separate and apart from the alleged pattern of racketeering activity." As discussed above, Plaintiffs have sufficiently pleaded that Manookian and the Hammervold Defendants engaged in racketeering activity of mail fraud, wire fraud, and violations of the Travel Act. Separate and apart from this activity, Plaintiffs allege the Hammervold Defendants represent Manookian in unrelated litigations and have acted as co-counsel with Manookian in unrelated litigations (Dkt. #131 at ¶ 18). Further, evidence establishing the enterprise and the pattern of racketeering may "coalesce." *Plambeck*, 802 F.3d at 673. Plaintiffs here have sufficiently alleged Manookian referred litigation to the Hammervold Defendants, including the litigations that formed part of the alleged racketeering activity.

Plaintiffs have pleaded plausible facts of the existence of an enterprise or association-in-fact.

*Civil Conspiracy*

The Hammervold Defendants argue the Court should dismiss Plaintiffs' civil conspiracy claims because the factual basis for the claims is premised "on absolutely privileged activity." (Dkt. #137 at p. 19). The Hammervold Defendants state that the Texas Citizen's Participation Act ("TCPA") protects individuals from retaliatory lawsuits if a defendant shows that a plaintiff's claim is based on, relates to, or is in response to the defendant's exercise of the right to petition. (Dkt. #137 at p. 20 (citing Tex. Civ. Prac. & Rem. Code § 27.005(b)). The Hammervold Defendants argue the TCPA applies because the sole factual basis for Plaintiffs' claims is the allegation that Hammervold accepted client referrals from Manookian.

Plaintiffs respond that The Hammervold Defendants' willingness and availability to prosecute claims against The Diamond Doctor and other jewelers is part of Manookian's overall scheme to extort jewelers. Plaintiffs allege that outside of any judicial proceeding, the Hammervold Defendants and Manookian "agreed and conspired to smear the business names and ownership of various jewelry retailers across the country, including, without limitation, The Diamond Doctor, and extort millions of dollars from them." (Dkt. #131 at ¶ 116).

"Under Texas law, it is well settled that any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action." *Beta Health All. MD PA v. Kelley Witherspoons LLP*, No. CIV A 309-CV-0399-BF, 2009 WL 2222630, at *2 (N.D. Tex. July 22, 2009). Here, Plaintiffs allege the Hammervold Defendants conspired with Manookian to file suit against Plaintiffs as part of the fraud and extortion scheme. This scheme, and not the judicial proceedings themselves, form the basis of Plaintiffs civil action. Plaintiffs have pleaded sufficient facts to state a plausible claim of civil conspiracy.

## CONCLUSION

It is therefore **ORDERED** that Defendants Mark Hammervold and Hammervold, PLC's Amended Motion to Dismiss (Dkt. #137) is hereby **DENIED**.

**SIGNED** this 26th day of April, 2017.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE