**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **THE DIAMOND CONSORTIUM, LLC, D/B/A THE DIAMOND DOCTOR and DAVID BLANK** | § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 4:16-cv-94** |
| **v.** | § § | |
| **BRIAN MANOOKIAN, BRIAN CUMMINGS, CUMMINGS MANOOKIAN, PLC, HAMMERVOLD PLC, and MARK HAMMERVOLD,** | § § § § § | |
| **Defendants.** | § § | |

---

## DEFENDANTS' MOTION FOR SANCTIONS DUE TO FABRICATION OF EVIDENCE

---

May 18, 2017

Christopher J. Schwegmann
Texas State Bar No. 24051315
cschwegmann@lynnllp.com
Andres Correa
Texas State Bar No. 24076330
acorrea@lynnllp.com
Christina Mullen
Texas State Bar No. 24092868
cmullen@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas  75201
(214) 981-3800 - Telephone
(214) 981-3839 - Facsimile

**ATTORNEYS FOR DEFENDANTS
BRIAN MANOOKIAN and CUMMINGS
MANOOKIAN, PLC**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

I.      SUMMARY ............................................................................................................ 1

II.     BACKGROUND ..................................................................................................... 3

        A.      Its Fraud Exposed, Diamond Doctor Defends Itself By Claiming It Adequately
                Discloses Grading Differences. .............................................................. 3

        B.      Defendants Request Copies of Diamond Doctor's Alleged "Full Disclosure." ..... 5

        C.      Defendants Secure Original Receipts and Appraisals and Discover Diamond
                Doctor Produced Fabricated Receipts and Appraisals. ........................................ 7

        D.      Plaintiffs' Expert Relies on the Fabricated Evidence to Conclude "Diamond
                Doctor did not misrepresent their diamonds to their clients." ............................ 11

        E.      Diamond Doctor and Blank's Motivation: Their Own Employees Admit Their
                Fraud. .......................................................................................................... 12

III.    ARGUMENT ........................................................................................................ 12

        A.      Plaintiffs Altered Evidence. ................................................................. 13

        B.      Plaintiffs Spoliated Evidence. ............................................................. 14

        C.      Sanctions Are Appropriate.................................................................... 15

                1.      Legal Standard for Sanctions. ................................................... 15

                2.      Plaintiffs' Conduct Warrants a Spoliation Instruction,
                        Striking of Any Defense Based on Adequate Disclosure, and
                        Attorneys' Fees. ....................................................................... 18

IV.     CONCLUSION..................................................................................................... 21

CERTIFICATE OF SERVICE ........................................................................................ 22

CERTIFICATE OF CONFERENCE................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 678 (S.D. Tex. 2013) ........................ passim

*Andrade Garcia v. Columbia Med. Ctr. of Sherman,* 996 F.Supp. 605 (E.D.Tex.1998) ............. 14

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) ............................................................. 16

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ............................................................................ 13

*Cheatam v. JCPenney Co., Inc.*, No. 1:16-CV-00072-MAC, 2016 WL 7743028 (E.D. Tex. Nov. 9, 2016) ..................................................................................................................... 13, 19

*Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191 (5th Cir. 2005) ......................................... 15

*First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554 (5th Cir. 1996) ......................................... 13

*Johnese v. Jani-King, Inc.*, CIV.A. 3:06CV0533-D, 2008 WL 631237 (N.D. Tex. Mar. 3, 2008) .................................................................................................................................... 13, 16

*Lopez v. Kempthorne,* 684 F.Supp.2d 827 (S.D.Tex.2010) .................................................... 14, 15

*Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311 (Fed. Cir. 2011) ......................... 12, 17, 18, 20

*Natural Gas Pipeline v. Energy Gathering, Inc.*, 2 F.3d 1397 (5th Cir.1993) ............................ 16

*Nichols v. Klein Tools, Inc.*, 949 F.2d 1047 (8th Cir. 1991) ........................................................ 16

*Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. 4:09-cv-4039, 2014 WL 651944 (S.D. Tex. Feb. 19, 2014) ..................................................................................................................... passim

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) .......................................................... 15, 16

*United States v. Hudson*, 7 Cranch 32 (1812) ............................................................................. 16

*Vargas v. Peltz*, 901 F.Supp. 1572 (S.D. Fla.1995) ..................................................................... 16

*VocalSpace, LLC v. Lorenso*, 4:09CV350, 2010 WL 5247451 (E.D. Tex. Dec. 16, 2010) ................................................................................................................................ 14, 15, 16

**Other Authorities**

Fᴇᴅ. R. Cɪᴠ. P. 37 ........................................................................................................................ 15

TO THE HONORABLE COURT:

Defendants/Counter-Plaintiffs Brian Manookian, Brian Cummings, and Cummings Manookian, PLC ("Cummings Manookian") (together, "Defendants") file this Motion for Sanctions Due to Fabrication of Evidence ("Motion"), and in support thereof show as follows:

## I. SUMMARY

Defendants move for sanctions against David Blank and Diamond Doctor for defrauding the Court and spoliating evidence. Diamond Doctor and David Blank produced thousands of sales records and swore they were true and correct copies of the original records. But Defendants, who were able to secure some of these originals from third parties, discovered that the produced sales records contain a disclaimer not found in the originals. That fabricated language goes to a core issue in this case.

In this dispute, when Defendants began soliciting Diamond Doctor customers who may have purchased overgraded diamonds from Diamond Doctor, Diamond Doctor and its owner David Blank called Defendants extortionists and liars. They fabricated an "extortion contract" and published it online, calling Cummings Manookian "a criminal enterprise masquerading as a law firm." They lobbied news organizations to publish articles lauding Diamond Doctor and its owner, David Blank, and disparaging Defendants. And they filed three separate lawsuits in three separate courts, including this one.

In sworn affidavits and pleadings filed with the Court, Diamond Doctor and Blank explained that the reason Defendants were liars is because Diamond Doctor and Blank do not mislead their customers when they sell diamonds graded by disreputable grading labs. Instead, the story went, "Diamond Doctor offers all their customers extensive and practical diamond education and has a policy of FULL disclosure to all of its customers at each and every step of the

education and diamond selling process." Ex. 2 (Blank 10-30-15 Aff. ¶ 16) (emphasis in original). In this lawsuit's live pleading, Blank and Diamond Doctor plead that "The Diamond Doctor has had, and continues to maintain, a consistent policy of disclosing to its clients the potential for significant differences between grading and certification from one laboratory to another."  Doc. 131 at ¶ 23.

When Defendants requested that Plaintiffs produce these disclosure-filled sales records, Plaintiffs produced thousands of sales receipts and appraisals, each with a disclosure consistent with Blank's affidavit testimony and Plaintiffs' pleadings: "A diamond certificate, also called a diamond grading report is a report created by an independent laboratory stating the quality of a diamond according to their grading standards.  The standards vary between laboratories." *See* Exs. 7-12.  In an affidavit, Diamond Doctor's records custodian swore that these sales receipts and appraisals were "true and correct copies of the" sales receipts and appraisals for "sales made" by Diamond Doctor.  Ex. 6.  And Diamond Doctor's expert quoted extensively from this same disclosure language in his report, relying on that language to conclude that Diamond Doctor misled no one. Ex. 13.

Diamond Doctor lied.  It fabricated these purported receipts and appraisals, and it swore that they were authentic.  Defendants obtained from third parties and attach to this Motion an example of six original sales receipts and appraisals directly from Diamond Doctor customers, and *the original receipts and appraisals do not contain the quoted disclosure*.  They contain no disclosure at all.  What is more, Plaintiffs have been unable to explain why they could not produce the original records, even those dated as recently as January 2016, or months into this dispute and litigation.  And Plaintiffs have refused to identify the customers by name or provide contact

information, which prohibits Defendants from verifying whether the documents produced are true and correct copies, thereby heightening the deception.

Plaintiffs have committed a fraud upon this Court, and they have destroyed evidence.[1] Defendants respectfully request that the Court sanction Plaintiffs by issuing an order that: (1) prohibits Diamond Doctor or Blank from alleging at trial that they adequately disclose grading differences; (2) instructs the jury that Plaintiffs destroyed evidence, and that the jury can infer that evidence was prejudicial to Plaintiffs; and (3) awards Defendants any attorneys' fees incurred in connection with this Motion, as well as for any fees incurred on discovery necessary to understand how Plaintiffs destroyed records and fabricated new ones.

## II.  BACKGROUND

### A.  Its Fraud Exposed, Diamond Doctor Defends Itself By Claiming It Adequately Discloses Grading Differences.

This lawsuit began as the third lawsuit Diamond Doctor filed after Cummings Manookian, in late 2015, began soliciting clients who may have claims against Diamond Doctor.  Diamond Doctor alleges that "beginning in October 2015, Manookian established two websites, www.diamonddoctorlawsuit.com and www.diamonddoctorclassaction.com, falsely accusing The Diamond Doctor of having committed 'diamond fraud' and 'cheat[ing] customers through the sale of 'overgraded' diamonds."  Doc. 131 ¶ 30.  In those websites, Cummings Manookian explained that "Intentional diamond overgrading is the deliberate misrepresentation of a diamond's characteristics by a retailer to a consumer.  Most commonly, a jewelry store claims that one or more of a diamond's Four C's (carats, color, clarity, and cut) is better than its true grade."  Doc. 13-1 at App. 137.  Defendants will prove that overgrading is especially prevalent when jewelers

---

[1] It is worth nothing that this fraud upon the Court is occurring in the same case in which Plaintiffs and their counsel have stated that Brian Cummings, Brian Manookian, and Mark Hammervold are not of good professional or moral character.

sell diamonds graded by the now-defunct and disreputable EGL-I grading laboratory.  *See* Doc. 47 ¶ 8 ("EGL-International . . . is the 'lab' at the center of the long-running over-grading fraud.  . . . EGL-I is a for-profit franchise that is universally regarded as the most inferior and dishonest of the grading services.").

Diamond Doctor's first line of defense was a full scale attack against Cummings Manookian, both in court and in the public.  It fabricated an "extortion contract" by altering a document with Mr. Manookian's signature, and it then published it online, calling Cummings Manookian "a criminal enterprise masquerading as a law firm".  Ex. 14 (attaching as Exhibit 6 altered contract).  It lobbied news organizations to publish articles lauding Diamond Doctor and its owner, David Blank.  Ex. 15 (privilege log from Diamond Doctor's publicist reflecting communications with Dallas Morning News).  And it filed three separate lawsuits in three separate courts, including this one.  Exs. 1, 3, 4.

Aside from its attack campaign against Defendants, Diamond Doctor's substantive defense was simple: admit that EGL-I is misleading and unreliable, but showcase how thoroughly and comprehensively Diamond Doctor disclosed to its customers the differences in grading among labs.  In its first, October 30, 2015 lawsuit against Manookian in Dallas District Court ("First Lawsuit"), Diamond Doctor Diamond Doctor admitted that "GIA is considered by the diamond and jewelry industry as the world's leading laboratory and authority on diamond and gemstone grading and certification." Ex. 1 (¶ 17-18).  Blank swore in a contemporaneous affidavit that "[b]y reason of the difference in the grading and certification standards applied by GIA and EGL, it is generally accepted in the diamond and jewelry industry that grading and certification by EGL is inferior to grading and certification by GIA."  Ex. 2 (Blank 10-30-15 Aff. ¶ 11).

Given the admitted "inferiority" of EGL diamond grading, Diamond Doctor touted its full disclosure policy: "Diamond Doctor offers all their customer extensive and practical diamond education and has a policy of FULL disclosure to all of its customers at each and every step of the education and diamond selling process." Ex. 2 (Blank 10-30-15 Aff. ¶ 16) (emphasis in original). Blank attached to his affidavit an undated "Diamond Certification Disclosure," which stated that "The EGL has less stringent grading standards than both the GIA and AGS labs. . . . **We do not agree with the EGL grading standards and do not price our diamonds based on EGL grading reports**." Ex. 1 (First Lawsuit Ex. A) (emphasis in original).

In Diamond Doctor's second lawsuit, filed in this court ("Second Lawsuit"), Diamond Doctor followed the same approach. It attacked Cummings Manookian as extortionists, but it nevertheless spent two full paragraphs touting its disclosure policies. Diamond Doctor represented that "The Diamond Doctor has and continues to maintain a consistent policy of disclosing to its clients the significant differences between grading and certification from, on the one hand, GIA and, on the other hand, non-GIA entities like EGL." Ex. 3 (Doc. 1 ¶ 3 at page 6). Its live pleading today contains the same language. Doc. 131 at ¶ 23. And in Diamond Doctor's third lawsuit, filed in Dallas County Court at Law ("Third Lawsuit," ultimately removed to this Court and consolidated with this action), Diamond Doctor again represented that it does "not over grade diamonds," accompanied with yet another affidavit from Blank. Ex. 4 (Third Lawsuit ¶ 47).

## B.    Defendants Request Copies of Diamond Doctor's Alleged "Full Disclosure."

In light of Diamond Doctor's insistence on the remedial nature of its full disclosure policy, Defendants requested supporting documents. Defendants asked for "Any and all documents . . . that provide any information to customers about diamond grading, diamond grading standards, or the differences in diamond grading standards among different grading reports"; "Any and all

literature, documentation, disclaimers and/or any written statement of any kind by you that discloses the difference in grading standards among GIA, EGL-USA, EGL-International . . . and other grader, or diamond grading in general;" and "Any and all documents . . . that you or anyone working for you or on your behalf presented or currently present to customers in connection with the purchase of a diamond that discuss, refer to, or otherwise reference diamond grading."  Ex. 5 (Defendants' First Requests for Production No. 3, 4).  Defendants also specifically requested diamond "invoices," "receipts," and "appraisals".  *Id*. (No. 1).

In response, Diamond Doctor produced 45,719 pages of sales receipts for sales made by Diamond Doctor (bates stamp range DD007714-DD053433) (referred to as "Fabricated Sales Receipts") and 6,431 pages of appraisals for diamonds sold by Diamond Doctor (bates stamp range DD001281-DD007713) (referred to as "Fabricated Appraisals").  Ex. 6 (Becker Aff. ¶ 3-4).  When Defendants questioned the authenticity of documents, Diamond Doctor provided a sworn business records affidavit.  In that affidavit and for the first time, Diamond Doctor testified that "The Diamond Consortium, LLC does not maintain paper copies of the printed copies of sales receipts and appraisals given to customers in its regular course of business, but instead maintains the data as electronically stored information in industry/retail-specific computer programs."  Ex. 6 (Becker Aff. ¶ 5).  Diamond Doctor did not explain why it did not maintain records going to the heart of its own defenses in this case.

Despite inexplicably failing to have original documents, in that affidavit, Diamond Doctor swore that the Fabricated Sales Receipts are "true and correct copies of the sales receipts for sales made by [Diamond Doctor]," and that the "only known differences between the documents bates stamped as DD007714-DD053433 and the original sales receipts given to customers are: (1) the customer names and contact information are redacted, and (2) there are no photographic images."

Ex. 6 (Becker Aff. ¶ 3).  With respect to the Fabricated Appraisals, Diamond Doctor similarly swears that they are "true and correct copies of the appraisals for diamonds sold by [Diamond Doctor]," with the "only known differences between the documents bates stamped as DD001281-DD007713 and the original appraisals given to customers [being]: (1) the customer names and contact information are redacted, (2) the font style and formatting of the words 'Appraisal' and 'Diamond Doctor' are different, and (3) there are no photographic images." *Id.* (¶ 4).

When Defendants requested that Diamond Doctor disclose the name of the customers who had purchased the EGL and EGL-I graded diamonds, Diamond Doctor refused.  *See* Ex. 16 (Email producing sales records and noting that customer names have been redacted).  Defendants could have obtained directly from those customers the original sales receipts and appraisals, and indeed, given Diamond Doctor's failure to preserve relevant documents, those customers became the only way for Defendants to obtain the original records.  But Diamond Doctor would not disclose the names so that Defendants could obtain the original documents.

Consistent with Diamond Doctor's defense against the overgrading allegations, each of the sales receipts and appraisals contained the following disclaimer:

> A diamond certificate, also called a diamond grading report is a report created by an independent laboratory stating the quality of a diamond according to their grading standards.  The standards vary between laboratories.

Exs. 7-12.

## C.   Defendants Secure Original Receipts and Appraisals and Discover Diamond Doctor Produced Fabricated Receipts and Appraisals.

Thanks to the same advertising websites that Diamond Doctor calls "extortion," Defendants ultimately received a small sample of sales receipts and appraisals submitted by Diamond Doctor customers.  Defendants compared six of these receipts and appraisals to the documents Diamond Doctor produced.  These originals differed in the formatting and redactions,

as Diamond Doctor had testified. But there was one additional difference: **none of the original sales receipts and appraisals had the grading disclosure that the Fabricated Sales Receipts and Fabricated Appraisals contained**.

Exhibits 7 through 12 each contain one original sales receipt or appraisal, and the corresponding sales receipt or appraisal that Diamond Doctor produced.  Defendants do not have access to the thousands of other real sales receipts and appraisals that Plaintiffs describe in their own Complaints.  In the next two pages, the Court can see one of the Fabricated Appraisals, and one of the Fabricated Sales Receipts, and compare the disclosure language to the original.

What is even more striking is that the Fabricated Appraisals include appraisals made as recently as January 19, 2016, when Diamond Doctor was months into litigation with Cummings Manookian.  *See* Ex. 8 (Aly Hajee Appraisal dated 1/19/16).  There is no excuse for failing to retain the original receipts and appraisals at least starting on October 2015, and yet Diamond Doctor is unable to explain the absence of these critical records.

## ORIGINAL



This is to certify that we have carefully examined the articles listed below and appraised those articles at current fair market retail replacement value. This certificate does not constitute an offer to purchase or replace articles. Appraised values are based upon our estimate of size and quality of the above mentioned articles. Appraiser assumes no responsibility to any action which may be taken with respect to this article.



## FALSIFIED



This is to certify that we have carefully examined the articles listed below and appraised those articles at current fair market retail replacement value. This certificate does not constitute an offer to purchase or replace articles. Appraised values are based upon our estimate of size and quality of the above mentioned articles. Appraiser assumes no responsibility to any action which may be taken with respect to this article. A diamond certificate, also called a diamond grading report is a report created by an independent laboratory stating the quality of a diamond according to their grading standards. The standards of grading vary between laboratories.



---

## ORIGINAL



The diamonds listed on this invoice have been purchased from legitimate sources not involved in funding conflict and in compliance with all United Nations resolutions. Diamond Doctor hereby guarantees that these diamonds are conflict free, based on personal knowledge and/or written guarantees provided by the supplier(s) of these diamonds.



## FALSIFIED



The diamonds listed on this invoice have been purchased from legitimate sources not involved in funding conflict and in compliance with all United Nations resolutions. Diamond Doctor hereby guarantees that these diamonds are conflict free, based on personal knowledge and/or written guarantees provided by the supplier(s) of these diamonds. A diamond certificate, also called a diamond grading report is a report created by an independent laboratory stating the quality of a diamond according to ther grading standards. The standards of grading vary between laboratories.



### D.  Plaintiffs' Expert Relies on the Fabricated Evidence to Conclude "Diamond Doctor did not misrepresent their diamonds to their clients."

Plaintiffs have not just produced fabricated evidence; they have relied upon it.  Plaintiffs designated Robert James as a testifying expert "to provide an evaluation of documents submitted to me regarding sales made by the Diamond Doctor of Dallas to nine (9) customers".  Ex. 13 (James Report at 1).  James notes that "[t]o accomplish this evaluation, I have been provided with copies of the sales documents of the original diamond sale."  *Id*.  After the first page of his report, he includes each of the Fabricated Sales Receipts identified above, each with the disclosure proven not to be part of the actual original sales receipt.  *Id*.

James relies extensively on the Fabricated Sales Receipts in his report.  He notes that the purchasers "admitted" having received the Fabricated Sales Receipts.  Ex. 13 (Report at 13, 16, 18).  He quotes documents signed by these purchasers representing that they "have read the above disclosure."  *Id*. (Report at 20).  Most egregiously, he specifically relies on the purchasers having received the fabricated disclosure: "Mr. Goldson admitted that the appraisal [and "the Sales Receipt"] he received from the Diamond Doctor . . . included the following language: 'A Diamond Certificate, also called a Diamond Grading Report, is a report created by an independent laboratory stating the quality of a diamond according to their grading standards.  The standards of grading vary between laboratories.'"  *Id*. (Report at 20).

He concludes, after his analysis of each of the defrauded diamond purchasers, that "Based on the transaction documents" or "Reviewing the documents" or "Based on the documents provided," he "can find no element of a deceptive trade practice, or of misrepresentation."  Ex. 13 (Report at 13, 19, 21, 22, 23).  Each of these "documents" is falsified.

**E.**      **Diamond Doctor and Blank's Motivation: Their Own Employees Admit Their Fraud.**

The reason why Diamond Doctor and Blank felt the need to create evidence has become clear through discovery in this case: their own employees admit to Diamond Doctor and Blank's fraud.

Neil Rutledge, who worked at Diamond Doctor back in 203, is a master goldsmith with nearly forty years of experience in the industry.  Ex. 17.  He obtained a certification from the Gemological Institute of America at age 21.  *Id.*  He explains, just as Diamond Doctor admitted in pleadings, that "GIA grading is the generally accepted diamond grading standard in the jewelery industry."  *Id.* (¶ 6).  He explains that "On more than one occasion, I heard Diamond Doctor salespersons tell customers, 'GIA is more stric, but EGL and GIA are very close.'"  Id. (¶ 8).  He reveals that David Blank "would personally grade some of the diamonds sold by Diamond Doctor," and he would "overgrade[] in a manner that would increase its sales price."  Id. (¶ 10).  When Mr. Rutledge brought this up, Diamond Doctor employees would simply laugh it off, explaining that it was "DIA grading."  *Id.* (¶ 11).

Given this testimony, it should be no surprise that Diamond Doctor and Blank felt the need to create evidence beneficial to them in the hopes of escaping a finding of fraud, which would undo all if its allegations that Defendants' advertisements are false.

## III.      ARGUMENT

"Litigations are fought and won with information."  *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1327 (Fed. Cir. 2011).  For the proper functioning of the judicial process, courts must rely on parties and their counsel for accurate information, and when complying with discovery rules, parties must conduct themselves in good faith and with diligence and honesty.  *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. 4:09-cv-4039, 2014 WL 651944, at *10 (S.D. Tex. Feb. 19, 2014).

One of the greatest injuries any litigant "can cause upon her fellow parties and the court is the hindering of the judicial process: 'tampering with the administration of justice . . . involves far more than an injury to a single litigant.  It is wrong against the institutions set up to protect and safeguard the public.'"  *Cheatam v. JCPenney Co., Inc.*, No. 1:16-CV-00072-MAC, 2016 WL 7743028, at *4 (E.D. Tex. Nov. 9, 2016) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).   Here, Plaintiffs have tampered with the administration of justice by altering and spoliating evidence.

Where litigants run afoul of their obligations, the Court may exercise its implied powers with discretion to sanction and/or redress the litigant's misconduct.  *Johnese v. Jani-King, Inc.*, CIV.A. 3:06CV0533-D, 2008 WL 631237, at *2 (N.D. Tex. Mar. 3, 2008) (Fitzwater, J.) (citing *Chambers v. NASCO, Inc.*, 501 U.S. at 43).

## A.      Plaintiffs Altered Evidence.

 "One of the most extreme methods by which one may tamper with the judicial process is fraud on the court," which includes "*the fabrication of evidence . . . .*"  *Cheatam*, 2016 WL 7743028, at *5 (emphasis in original) (quoting *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996)).  "Across multiple jurisdictions, where a party is found to have fabricated evidence in an attempt to sway the court's decision making, such misconduct serves as clear and immediate grounds for dismissal of the offending party's action."  *Id.* (citing cases).

To establish fraud on the court, "'it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'"  *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996).  In *Cheatham*, for instance, the plaintiff altered a witness' statement and falsely attributed a statement to another witness.  2016 WL 7743028, at *5. The offending litigant "was unable to produce the original statements" in response to a subpoena, and he "was unable to specify when and where the spoliation of the [originals] occurred."  *Id.*  Just

like in this case, the offending litigant "testified under oath . . . [that the statements at issue] were authentic." *Id.* The fabricated evidence went to the heart of plaintiff's allegations; the Eastern District observed that the "manufactured statements both serve to substantiate her retaliation allegations and her Title VII claims, each of which are at the core of her original complaint." *Id.* at *6. The Court dismissed the plaintiff's claims with prejudice as a sanction.

Here, the evidence before the Court demonstrates that, first, Plaintiffs produced ***thousands*** of documents altered from their original form. Second, the alteration is material, as it goes to Plaintiffs' core defense against Defendants' diamond overgrading allegations, to wit, that Plaintiffs included full disclosures when selling diamonds. Third, when Defendants sought assurances regarding the authenticity of the documents, Plaintiffs swore that they were "true and correct copies" of the subject records. Fourth, Plaintiffs provided the fabricated documents to their expert, and their expert disclosed, in response to the Court's order, an opinion that extensively relied upon the fabricated documents.

These facts are indisputable. They constitute a fraud upon the court.

## B.    Plaintiffs Spoliated Evidence.

"Spoliation is a longstanding doctrine which applies to 'the destruction of evidence [or][t]he destruction, or the significant and meaningful alteration of a document or instrument." *VocalSpace, LLC v. Lorenso,* 4:09CV350, 2010 WL 5247451, at *4 (E.D. Tex. Dec. 16, 2010) (Mazzant, J.) (quoting *Andrade Garcia v. Columbia Med. Ctr. of Sherman,* 996 F.Supp. 605, 615 (E.D.Tex.1998)). "If a party with a duty to preserve evidence fails to do so and acts with culpability, a court may impose appropriate sanctions. . . . The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id.* (*Lopez v. Kempthorne,* 684

F.Supp.2d 827, 890 (S.D.Tex.2010)).  "The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'"  *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005).

At least as far back as October 30, 2015, when Plaintiffs filed their First Lawsuit and alleged that they fully disclosed diamond grading differences to their customers, Plaintiffs knew that their sales records were relevant to pending litigation.  Plaintiffs made extensive allegations in their own pleadings regarding their disclosure policies.  There is no excuse for failing to preserve – at least starting in October 2015 – sales records of EGL-I graded diamonds.

Plaintiffs have therefore engaged in spoliation in two ways.  First, Plaintiffs altered evidence, as discussed above.  Second, Plaintiffs destroyed the original sales receipts and appraisals.

## C.    Sanctions Are Appropriate.

### 1.    Legal Standard for Sanctions.

Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders, "including an order under Rule 26(f)."  FED. R. CIV. P. 37(b)(2)(A).  "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980).  "This court may bar the disobedient party from introducing evidence, or it may direct that certain facts shall be 'taken to be established for purposes of the action.'"  *VocalSpace, LLC v. Lorenso*, 4:09CV350, 2010 WL 5247451, at *3 (E.D. Tex. Dec. 16, 2010) (quoting FED. R. CIV. P. 37(b)(2)(A)(i)).

Courts also have "inherent powers to enter sanctions" in response to abusive litigation practices.  *VocalSpace*, 2010 WL 5247451, at *4.  "The inherent powers of federal courts are those which 'are necessary to the exercise of all others.'"  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752,

764 (1980) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)).  In short, "when parties exploit the judicial process, a court may sanction conduct beyond the reach of other rules." *VocalSpace*, 2010 WL 5247451, at *4 (citing *Natural Gas Pipeline v. Energy Gathering, Inc.*, 2 F.3d 1397, 1407 (5th Cir.1993)).

A court may impose severe sanctions when a party acted in bad faith or "willfully abused" the judicial process.[2]  *See id.*  Bad faith involves "fraudulent intent and a desire to suppress the truth" or "destruction for the purpose of depriving the adversary of the evidence." *Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 684 (S.D. Tex. 2013).  The hallmark or "fundamental element" of bad faith is "advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Godlevsky*, No. 4:09-cv-4039, at *10.

With respect to fraud upon the court, dismissal of claims is "especially appropriate 'where a party manufactures evidence which purports to corroborate its substantive claims.'" *Johnese v. Jani-King, Inc.*, CIV.A. 3:06CV0533-D, 2008 WL 631237, at *2 (N.D. Tex. Mar. 3, 2008) (Fitzwater, J.) (quoting *Vargas v. Peltz*, 901 F.Supp. 1572, 1581 (S.D. Fla.1995) (dismissing suit where plaintiff in sexual harassment lawsuit fabricated evidence)).  *See also Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (dismissing case where plaintiff had attached fabricated document to complaint); *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048 (8th Cir. 1991) (dismissing action where plaintiff lied about whether he was using defendant's product at time of alleged accident).

---

[2] This Court in *VocalSpace* found a lack of bad faith to support death penalty sanctions but ruled that the destroying party should have preserved the documents in question; therefore, introducing evidence of document destruction was a proper sanction.  2010 WL 5247451 at *5.

As for spoliation, courts have broad discretion in determining an appropriate remedy, which should (1) deter others from spoliating evidence, (2) punish the spoliating party for its destruction, and (3) restore the harmed party to "the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *McKinney*, 964 F. Supp. 2d at 682-83. Other possible sanctions include "deeming certain facts admitted, giving an adverse inference instruction to the jury, excluding evidence of expert testimony, striking pleadings, entering a default judgment, and dismissing the case entirely." *Id.* at 683.

In considering whether to impose sanctions for spoliation, a court should consider: (1) whether there was a duty to preserve evidence; (2) whether the alleged spoliator breached the duty; and (3) whether the spoliation prejudiced the nonspoliator's ability to present its case or defense. *Id.* Prejudice is shown when the party moving for sanctions demonstrates that the altered or destroyed evidence is relevant to the case, which means that a "reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Id.* at 685. "[I]n the case of willful spoliation, the spoliator's mental culpability is itself evidence of the relevance of the documents destroyed." *Godlevsky*, No. 4:09-cv-4039, at *11. Put simply, a party is prejudiced when his ability to present his case is compromised. *McKinney*, 964 F. Supp. 2d at 685. Importantly, a bad faith spoliator bears the "heavy burden" of showing a *lack* of prejudice to the opposing party "because a party who is guilty of [spoliating] evidence should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import." *Rambus*, 645 F.3d at 1328.

As is the case with fraud upon the court, death penalty sanctions are justified in egregious cases, "such as where as party has engaged in perjury, tampering with evidence, or intentionally destroying evidence by burning, shredding, or wiping out computer hard drives." *Godlevsky*, No.

4:09-cv-4039, at *9.  Dismissal is appropriate "where a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Rambus*, 645 F.3d at 1328.  While dismissal mandates clear and convincing evidence of bad faith and prejudice, the court must also take into account (1) the spoliator's degree of fault, (2) the degree of prejudice to the opposing party, and (3) whether another sanction will avoid "substantial unfairness" while still deterring similar conduct by others in the future.  *Id.*

## 2. Plaintiffs' Conduct Warrants a Spoliation Instruction, Striking of Any Defense Based on Adequate Disclosure, and Attorneys' Fees.

The fabricated evidence, and the missing records, all go to the core of Diamond Doctor and David Blank's defense against overgrading allegations in this case.  Beginning with their very first pleading filed against Defendants and through today, Plaintiffs have called Defendants liars and sued them for disparagement and defamation, alleging Defendants falsely accused Plaintiffs of misleading customers.  Diamond Doctor and Blank have sworn and pleaded that Defendants' accusations are false because Diamond Doctor and Blank have a policy of "FULL" disclosure. Plaintiffs have repeatedly and extensively discussed their purported disclosures.[3]  But when Defendants requested these touted records, they went missing.  To further frustrate Defendants' efforts, Plaintiffs also refused to identify the customers at issue and provide contact information so that Defendants could obtain the information from other persons who would have copies.  In lieu of original records, Diamond Doctor and Blank produced thousands of pages of sales records – the Fabricated Appraisals and Fabricated Sales Receipts – with a self-serving disclosure consistent with their pleadings and testimony.  Diamond Doctor then doubled-down on those

---

[3] *See, e.g.*, Doc. 131 ¶¶ 23-24 ("The Diamond Doctor's Policy of Full Disclosure.  The Diamond Doctor has had, and continues to maintain, a consistent policy of disclosing to its clients the potential for significant differences between grading and certification from one laboratory to another. […] The Diamond Doctor purposefully sets out to explain these differences to each of its customers….").

fabricated records by swearing that they were "true and correct," and that they represented the same substantive information as the original sales records.   And then they provided those fabricated records to an expert, who, relying and quoting from those same fabricated statements, reached conclusions favorable to Diamond Doctor and Blank.

This conduct constitutes bad faith, and it is willful.   Inserting language into a document that did not contain such language before is willful conduct.   Lying under oath about the authenticity of those records is willful conduct.   Failing to preserve records relevant to the subject matter of a lawsuit you are bringing is willful conduct.   In short, what Diamond Doctor and its owner David Blank have done here is intentionally fraudulent conduct to obtain an advantage in litigation.   Diamond Doctor and Blank's "fabrication of evidence was manufactured to corroborate vital elements of [their] claims, and thus was designed to improperly influence" this Court and fact-finder. *See Cheatam*, 2016 WL 7743028, at *6.

Understandably, Diamond Doctor and Blank would want to suppress the truth on this issue to buttress their assertions that they adequately inform customers about grading differences. *See McKinney*, 964 F. Supp. 2d at 684.   But the truth remains that, instead of coming forth with real evidence to show proper disclosure and addressing the merits of this underlying dispute about diamond overgrading, Diamond Doctor and Blank have defamed Defendants by alleging an extortion scheme and use these fabricated documents in support thereof.   This act constitutes the "hallmark" or "fundamental element" of bad faith: Diamond Doctor and Blank have superior access to the receipts, appraisals, and information provided to customers, which information is necessary to seek justice in this lawsuit, and they sought to advantage themselves by doctoring that information.    *Godlevsky*, No. 4:09-cv-4039, at *10.

Because Diamond Doctor and Blank acted in bad faith, they bear the "heavy burden" of showing a *lack* of prejudice to Defendants because they should not be able to excuse their misconduct by simply claiming the altered documents are minimally important. *See Rambus*, 645 F.3d at 1328.  Nevertheless, prejudice is apparent here because the altered sales records are relevant to Defendants' allegations of Plaintiffs' overgrading, Plaintiffs' allegations of an extortion scheme, and Defendants' exposure of Plaintiffs' concocted story regarding that extortion scheme to divert attention and liability away from their overgrading practices. *See McKinney*, 964 F. Supp. 2d at 685.  If the original sales records in fact do not contain the disclosures Blank and Diamond Doctor swear they did (and the very few records that Defendants have been able to secure), but Defendants cannot show those thousands of sales records to the jury, Defendants are indelibly prejudiced.

Because these documents concern the very heart of these disputes, a reasonable trier of fact could conclude they support Defendants' claims and defenses. *Id.*  As the *Godlevsky* court stated, Plaintiffs' intentional alterations are evidence of the relevance of the documents.  No. 4:09-cv-4039, at *11 ("[I]n the case of willful spoliation, the spoliator's mental culpability is itself evidence of the relevance of the documents destroyed.").  In other words, Defendants are prejudiced because their ability to defend themselves and present their claims is compromised by the misinformation produced through discovery and also provided to Plaintiffs' expert, whose opinions would be given to a jury to ultimately decide these disputes. *See McKinney*, 964 F. Supp. 2d at 685 (a party is prejudiced when his ability to present his case is compromised).

The only sanctions that can remedy such misconduct here, short of outright dismissal of Plaintiffs' claims – all of which are premised on Defendants allegedly lying about Diamond Doctor's overgrading practices – are (1) for the Court to prohibit Diamond Doctor or Blank from alleging at trial that they adequately disclose grading differences; (2) for the Court to instruct the

jury that Plaintiffs destroyed evidence, and that the jury can infer that evidence was prejudicial to Plaintiffs; and (3) an award of attorneys' fees incurred in connection with this Motion, as well as fees incurred on any discovery necessary to understand how Plaintiffs destroyed records and fabricated new ones.

Given the relevance of the records at issue, the egregiousness of the conduct, and the prejudice to Defendants, no other sanction will adequately remedy this affront.  Indeed, dismissal of Diamond Doctor and Blank's disparagement, RICO, and defamation claims would also be an appropriate sanction here, for "the willingness to deceive one's fellow litigants, as well as the court, is such a severe misdeed that outright dismissal in the first instance is an appropriate course of action." *Cheatam*, 2016 WL 7743028, at *6.  This is because:

> Permitting a lawsuit to proceed despite proven fraud on the court would be an open invitation to abuse the judicial process.  Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues.  Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Id.* at *7.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (1) prohibit Diamond Doctor or Blank from alleging at trial that they adequately disclose grading differences; (2) instruct the jury that Diamond Doctor and Blank destroyed evidence, and that the jury can infer that evidence was prejudicial to Plaintiffs; and (3) award Defendants any attorneys' fees incurred in connection with this Motion, as well as for any fees incurred on discovery necessary to understand how Diamond Doctor and Blank destroyed records and fabricated new ones. Defendants also request any additional relief to which they may show themselves entitled.

Date:  May 18, 2016.                    Respectfully submitted,


                                        /s/ Andres Correa
                                        Christopher J. Schwegmann
                                        Texas State Bar No. 24051315
                                        cschwegmann@lynnllp.com
                                        Andres Correa
                                        Texas State Bar No. 24076330
                                        acorrea@lynnllp.com
                                        Christina M. Carroll
                                        Texas State Bar No. 24092868
                                        ccarroll@lynnllp.com
                                        **LYNN PINKER COX & HURST, LLP**
                                        2100 Ross Avenue, Suite 2700
                                        Dallas, Texas 75201
                                        (214) 981-3800 - Telephone
                                        (214) 981-3839 - Facsimile

                                        **ATTORNEYS FOR DEFENDANTS**
                                        **BRIAN MANOOKIAN and CUMMINGS**
                                        **MANOOKIAN, PLC**


## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a true and correct copy of the above and foregoing
document has been served via the Court's ECF system on the 18th day of May, 2016:


                                        /s/Andres Correa
                                        Andres Correa


## CERTIFICATE OF CONFERENCE

        Counsel for Defendants conferred with Counsel for Plaintiffs via telephone on May 17,
2017.  Counsel for Plaintiffs opposes the relief requested herein.


                                        /s/Andres Correa
                                        Andres Correa


02878-601/4825-1572-8968, v.  3