IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **DIAMOND CONSORTIUM, INC.** § | | |
| **D/B/A THE DIAMOND DOCTOR,** § | | |
| § | | |
| § | | |
| *Plaintiff,* § | | |
| § | | |
| vs. § | CASE NO. 4:16-cv-00094-ALM | |
| § | | |
| **BRIAN MANOOKIAN AND** § | | |
| **CUMMINGS MANOOKIAN , PLC** § | | |
| § | | |
| § | | |
| *Defendants*. § | | |

**JOINT MOTION TO INTERVENE AND MODIFY PROTECTIVE ORDER**

Plaintiffs Diamond Consortium, Inc. d/b/a The Diamond Doctor ("Diamond Doctor") and David Blank file this Joint Motion to Modify Protective Order (the "Motion to Modify"), and Nonparties Mark Hammervold, and Jewelers Mutual Insurance Company (collectively, "Nonparties") file this Motion to Intervene and Motion to Modify and in support thereof would respectfully show as follows:

**INTRODUCTION**

Diamond Doctor and Blank filed this lawsuit against Defendants Brian Manookian and Cummings Manookian, PLC (collectively, "Manookian") and against Hammervold and his law firm, Hammervold, PLC (collectively, "Hammervold") ("Manookian Lawsuit"). [Docs. #1, #99, #131]. Diamond Doctor and Blank sued Manookian alleging Manookian engaged in a scheme to defame and defraud Diamond Doctor and Blank as well as other jewelers across the country. Diamond Doctor and Blank added Hammervold to the lawsuit asserting claims for violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1926(c) ("RICO") and for civil conspiracy. [Docs. #99, #131]. The parties in the Manookian Lawsuit entered into a Protective

Order detailing the confidentiality procedures that would govern discovery in this lawsuit, as well as governed the discovery in a later severed suit against Hammervold. [Doc. #128]. The Protective Order states that it will expire at the conclusion of this lawsuit, but it also forbids the use of discovery in any other disputes among the parties.

On February 27, 2020, Mark Hammervold filed a separate lawsuit in this Court alleging malicious prosecution and abuse of process claims against Diamond Doctor, Blank, Diamonds Direct USA of Dallas, LLC and Jewelers Mutual Insurance Company based on the filing and prosecution of the Manookian Lawsuit. *See* Compl. attached as Ex. A. *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al.,* No. 4:20-cv-00165 ("Hammervold Lawsuit"). Hammervold's allegations against the Defendants in the Hammervold Lawsuit are based on their alleged conduct in the Manookian Lawsuit.

All of the parties in the Hammervold Lawsuit would like access to the deposition transcripts, written discovery responses and documents produced ("Discovery Material") from the Manookian Lawsuit for potential use in the Hammervold Lawsuit, and seek to modify the Protective Order so that, for the limited purpose of prosecuting and defending the claims asserted in the Hammervold Lawsuit, the parties in that lawsuit may access and potentially use Discovery Material from the Manookian Lawsuit.[1]

Good cause exists to grant this Motion to Modify. The parties in the Hammervold Lawsuit will not further disseminate the Discovery Material, except for the limited purposes described in this Motion to Modify. An order by this Court authorizing the parties to use the Discovery Material will not destroy the confidential nature of the Discovery Material. The requested relief will not impact the Protective Order's purpose, which was primarily intended to prevent the

---

[1] The parties in the Hammervold Lawsuit also agree that Hammervold, who is an attorney, but is representing himself *pro se* should be permitted to receive and use protected materials, including materials designated "attorneys eyes only" and ask the Court to specifically clarify this point in its order modifying the existing protective order.

disclosure of Diamond Doctor's trade secret and proprietary information. [Doc. #36, Motion for Protective Order; Doc. #128, Protective Order.] The parties in the Hammervold Lawsuit simply seek to obtain access to potentially use the deposition transcripts and documents produced to prosecute and defend the claims asserted in that lawsuit based upon alleged conduct in the Manookian Lawsuit. The Court should grant this Motion.

## FACTUAL BACKGROUND

A.  **The Prior Lawsuits and Entry of a Protective Order.**

On February 3, 2016, this lawsuit was filed against Manookian. [Doc. #1]. On September 14, 2016, Hammervold was added to the lawsuit. [Doc. #99].

On June 16, 2016, Diamond Doctor filed a motion for protective order, requesting that the Court enter an order detailing confidentiality procedures to govern the production and exchange of discovery in the lawsuit. (Doc. #36.) Diamond Doctor's motion specified that the requested protective order was necessary to protect against unauthorized disclosure of trade secret and confidential information. *See id.*, at ¶¶ 3, 4, 16.

On October 25, 2016, the Court issued a protective order detailing the "confidentiality procedures . . . govern[ing] the production and exchange of all documents, testimony, interrogatories, and other information produced, given, or exchanged by and among the parties to and entities subject to discovery" in this lawsuit. [Doc. #128].

Paragraph 1 makes clear that the purpose and scope of the Protective Order is to protect trade secret and other confidential proprietary information:

> 1.  <u>Purpose and Scope.</u> Discovery in this Action may involve disclosure of ***trade secrets, confidential, proprietary, or sensitive business, technical, financial***, and personal information. This Protective Order . . . therefore is entered into to protect against unauthorized disclosure of such information and to appropriately limit the scope and breadth of discovery in the Action. . . .

*Id.* (emphasis added). Further, the Protective Order expressly states that it is to expire at the conclusion of the lawsuit: "Unless modified pursuant to the terms contained in this Order, ***this Order shall remain in effect through the conclusion of this litigation***." *Id*. at 1 (emphasis added). At the same time, the Protective Order also precludes the use of the discovery from this lawsuit in any other lawsuit among the parties:

> Discovery Material received in connection with discovery in this Action shall not be used in any other disputes between and/or among any of the Parties unless the Discovery Material was produced from the same source and within the discovery process of the respective other dispute between and/or among any of the Parties.

*Id.* at ¶ 1.

No one objected to the entry of the Protective Order.

Approximately nine months later, and on June 27, 2017, the Court severed the claims against Hammervold into a separate lawsuit entitled, *Diamond Consortium, Inc. and David Blank v. Mark Hammervold and Hammervold, PLC,* No. 4:17-CV-452. [Doc. # 268]. Although the Protective Order was not specifically entered in the severed action, the parties to the severed action continued to operate as though it applied to their case.

On August 16, 2017, the parties in the Manookian Lawsuit jointly requested the Court dismiss the lawsuit in accordance with the parties' settlement agreement. [Doc. #362]. The Court entered an order dismissing the lawsuit with prejudice that day. *Id*. Shortly thereafter, Diamond Doctor and Blank voluntarily dismissed their claims against Hammervold in *Diamond Consortium, Inc. and David Blank v. Mark Hammervold and Hammervold, PLC,* No. 4:17-CV-452.

B.      **The Hammervold Lawsuit.**

On February 27, 2020, Hammervold filed a separate lawsuit in this Court alleging malicious prosecution and abuse of process claims against Diamond Doctor, David Blank,

Diamonds Direct USA of Dallas, LLC and Jewelers Mutual Insurance Company based on their alleged conduct in the prior litigation.[2] Hammervold's claims against the Defendants in the Hammervold Lawsuit are based on their alleged improper conduct in bringing and prosecuting claims against Hammervold in the Manookian Lawsuit, and the severed action.[3]

## C. The Discovery Material from the Manookian Lawsuit, and severed action.

The parties deposed a number of individuals throughout the course of the prior lawsuits, including Manookian, Cummings, Hammervold, and several diamond retailers throughout the country. A certified court reporter prepared transcripts of those depositions. Additionally, the parties conducted written discovery and produced documents in the two prior lawsuits. Because the allegations in the Hammervold Lawsuit are based on alleged conduct that occurred in the prior lawsuits, the Discovery Material in the prior lawsuits is relevant to prosecuting and defending the claims in the Hammervold Lawsuit. As explained in more detail below, the parties seek to modify the Protective Order to be able to access and potentially use the Discovery Material from the prior lawsuits in this lawsuit.

## ARGUMENTS & AUTHORITIES

**A. Intervention is necessary for Non-Parties to seek to modify the Protective Order.**

"Nonparties to a case routinely access documents and records under a protective order or under seal in a civil case through motions for permissive intervention under Rule 24(b)(2)." *Newby v. Enron Corp.*, 443 F.3d 416, 418 – 19, 424 – 25 (5th Cir. 2006); *see also Ross Neely Sys., Inc. v. Navistar, Inc.,* No. 3:13-cv-1587-M-BN, 2015 WL 12916405, *4 (N.D. Tex. June 3, 2015). Federal Rule 24(b) provides that, on "timely motion," a court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of

---

[2] Ex. A: a true and correct copy of the Complaint in *Mark Hammervold v. Diamonds Direct USA of Dallas, LLC et al.,* No. 4:20-cv-00165.

[3] *Id.*

law or fact." *Id.* (quoting Fed. R. Civ. P. 24(b)(1)). The court must first determine whether, as a matter of law, the movant's claim or defense and the main action have a common question of law or fact. *Id.* Next, the court exercises its discretion to allow intervention. *Id.* "'Permissive intervention . . . is appropriate when the intervention request is timely, the intervenor's claim or defense and the main action have a question of law or fact in common, and granting intervention will not unduly delay or prejudice the original parties in the case.'" *Id.* (quoting *U.S. v. City of New Orleans,* 540 Fed. App'x. 380, 381 (5th Cir. 2013)).

The timeliness requirement simply is to guard against prejudicing the original parties by failing to appear sooner. *Ross Neely Sys.,* 2015 WL 12916405, at *5. Courts consider the following: (1) length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) extent of prejudice to existing parties from allowing late intervention, (3) extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances. *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247–48 (5th Cir. 2009).

Finally, Rule 24(c) requires the movant to serve on the parties both a copy of the motion to intervene, and a pleading which sets out the claim or defense for which intervention is sought. Fed. R. Civ. P. 24(c). The "pleading" requirement may be met by attaching a pleading that shows the common questions of law and fact. *Ross Neely Sys.,* 2015 WL 12916405, at *5.

**1. Common questions of law and fact.**

Hammervold's malicious prosecution and abuse of process claims against the Defendants in the Hammervold Lawsuit are based on their alleged improper conduct in bringing and prosecuting claims against Hammervold in the Manookian Lawsuit, and the severed action.[4] Common questions of law and fact clearly exist.

---

[4] *See* Ex. A.

### 2. The Motion is timely.

"[C]ourts have allowed intervention months or even years after the original filing of the suit 'where the substantial litigation of the issues had not been commenced when the motion to intervene was filed.'" *Smith Petroleum Serv., Inc. v. Monsanto Chem. Co.,* 420 F.2d 1103, 1115 – 16 (5th Cir. 1970) (quoting 3B MOORE, FEDERAL PRACTICE P24.13, at pp. 24-523 (2d ed. 1969)). Hammervold filed his malicious prosecution and abuse of process lawsuit on February 27, 2020.[5] All Defendants have filed 12(b) motions to dismiss. This Motion is timely, as it was brought within 4 months of Hammervold's filing of his lawsuit. *See Smith Petroleum Serv.,* 420 F.2d at 1116. The intervention is sought simply to amend the Protective Order to allow for the access and potential use of Discovery Material from the Manookian Lawsuit in the Hammervold Lawsuit. It will not affect the settlement and dismissal of claims in the Manookian Lawsuit.

### 3. Intervention would not cause undue delay or prejudice to the original parties.

The original parties, including Manookian, would not be prejudiced by allowing intervention at this time. The claims in the Manookian Lawsuit have been dismissed with prejudice by agreement. There is no proposal to re-open the merits of the lawsuit or to set aside any settlement agreement. This intervention poses no risk of disclosure as to Diamond Doctor's or other witnesses' trade secrets or proprietary information, which is the stated purpose of the Protective Order. The parties in the Hammervold Lawsuit are filing a joint agreed Protective Order in that litigation to maintain the same protections in that lawsuit as were established in the Manookian Lawsuit. Diamond Doctor – a party in both cases – also seeks the relief requested herein.

---

[5] *See* Ex. A.

### B. Good cause exists to modify the Protective Order.

District courts have broad discretion in entering and modifying protective orders. *U.S. v. Homeward Residential, Inc.,* No. 4:12-cv-461, 2016 WL 279543, *2 (E.D. Tex. Jan. 22, 2016). In fact, this Court retains jurisdiction post-judgment to modify a protective order. *Peoples v. Aldine Independent School Dist.,* No. 06-2818, 2008 WL 2571900, *2 (S.D. Tex. June 19, 2008). The Fifth Circuit utilizes a flexible approach towards modifying protective orders. *In re U.S. Motion to Modifying Sealing Orders,* No. 5:03-MC-2, 2004 WL 5584146, *3-4 (E.D. Tex. June 8, 2004) (citing *Superior Oil Co. v. American Petrofina Co.,* 785 F.2d 130, 131 (5th Cir. 1986)). In deciding a request to modify a protective order, the court considers four factors: (1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order, and most significantly (4) whether good cause exists for the modification. *Homeward Residential,* 2016 WL 279543, at *2.

First, in determining the nature of the protective order, courts are to consider the order's scope and whether it was court imposed or agreed to by the parties. *Id.* There are three types of protective orders. *Id.* at *3. Specific protective orders, the least susceptible to modification, are the narrowest type and cover specifically identified information. *Id.* Umbrella protective orders, the most susceptible to change, provide for the designation of all discovery as protected without any screening by either parties or the court. *Id.* Blanket protective orders – the middle ground - require the parties to designate as protected the information that each side reasonably believes particularly sensitive. *Id.* Here, the Protective Order is a blanket protective order because it allows the parties to designate information as protected when they in good faith believe it requires a level of increased secrecy. [Doc. #128 at ¶ 3]. While Diamond Doctor sought the Protective Order, all parties, including Diamond Doctor, whose trade secrets the Protective Order

were intended to protect, agree to the modification requested in this Motion to Modify. Thus, this factor should weigh in favor of modification.

Second, foreseeability is determined by looking at whether the need for modification was foreseeable at the time the parties negotiated the original stipulated protective order. *Id.* Here, the parties could not have known that Hammervold would file a subsequent lawsuit after the resolution of the first two lawsuits. Therefore, it was not foreseeable that further litigation would exist between the parties, and this factor weighs in favor of allowing the modification.

Third, the reliance factor focuses on the extent to which a party opposing the modification relied on the protective order in deciding which documents would be produced in discovery. *Id.* Here, while Diamond Doctor relied on the Protective Order, Diamond Doctor does not oppose the modification. So, this factor does not weigh in favor of denying modification.

Finally, the most important factor is whether good cause exists to grant the proposed modification. In evaluating whether good cause for modification exists, "the court must weigh [the] need for modification against [the] need for protection, and ought to factor in the availability of alternatives to better achieve both . . . goals." *Dean v. Texas Tech Univ. Health Sciences Ctr.*, 3:16-CV-2635-M, 2017 WL 9901155, at *7 (N.D. Tex. Sept. 25, 2017) (quoting *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 180 (N.D. Ill. 2006)). "Good cause includes the need to make information available for use in subsequent proceedings." *Peoples,* 2008 WL 2571900, at *3; *see also Newby v. Enron Corp.*, 443 F.3d 416, 418 – 19, 424 – 25 (5th Cir. 2006); *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). Indeed, "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz,* 331 F.3d at 1131; *see also Bell ex rel. Bell v. Chrysler Corp.,* No. 3:99-cv-0139-M, 2002 WL 172643, *1-2 (N.D. Tex. Feb. 1, 2002).

Further, the Fifth Circuit has recognized a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy. *See, e.g., Newby*, 443 F.3d at 418–19, 424–25 (affirming district court's grant of the Texas Board of Public Accountancy's motion to intervene and modify protective order which sought access to discovery relating to accounting services performed by Arthur Anderson on behalf of Enron that were subject to protective order, reasoning that the board needed to access discovery in order to carry out its mandate of investigating and disciplining accountants for alleged misconduct).

Here, there is good cause for modifying the Protective Order. First, Hammervold is asserting claims of malicious prosecution and abuse of process in the Hammervold Lawsuit arising from allegations of purported bad faith in serving and prosecuting the Manookian Lawsuit. Being able to use the same discovery will facilitate judicial economy. Further, the requested modification will not impact the Protective Order's purpose, which was to prevent Defendants from disclosing trade secret and proprietary information "through the conclusion of this litigation." [Doc. #128 at 1]. The parties seek to modify the Protective Order to use the Discovery Material as evidence in the Hammervold Lawsuit and have agreed to maintain the confidentiality of the Discovery Material and are requesting the entry of a similar protective order in the Hammervold Lawsuit. Thus, the requested modification will not destroy the confidential nature of the Discovery Material. All parties in the Hammervold Lawsuit agree to this Motion to Modify. The Motion should be granted.

## CONCLUSION

For all of the reasons stated above, Plaintiffs and Nonparty Intervenors jointly request that the Court enter an order granting their Motion to Intervene and Modify the Protective Order,

issue an order modifying the Protective Order to authorize the parties to access the Discovery Material obtained in this lawsuit, and for any further relief to which the Court finds reasonable and necessary.

          Respectfully submitted,

          **COBB MARTINEZ WOODWARD PLLC**
          1700 Pacific Avenue, Suite 3100
          Dallas, Texas 75201
          (214) 220-5200 Telephone
          (214) 220-5299 Facsimile

          By:     /s/ *Carrie J. Phaneuf*
             **CARRIE JOHNSON PHANEUF**
             Texas Bar No. 24003790
             email: cphaneuf@cobbmartinez.com
             **KATHERINE ELRICH**
             Texas Bar No. 24007158
             email: kelrich@cobbmartinez.com

          **ATTORNEYS FOR PLAINTIFFS DAVID BLANK AND DIAMOND CONSORTIUM, INC. D/B/A THE DIAMOND DOCTOR**

**HAMMERVOLD LAW**
155 S. Lawndale Avenue
Elmhurst, Illinois 60126
(405) 509-0372 Telephone
(615) 928-2264 Facsimile


By: */s/ Mark Hammervold*
    **MARK HAMMERVOLD**, *Pro Se*
    IL #6320744
    email: mark@hammervoldlaw.com

**DEFENDANT,** *PRO SE*



**THOMPSON, COE, COUSINS & IRONS, LLP**
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
(214) 871-8200 Telephone
(214) 871-8209 Facsimile


By: */s/ Shawn W. Phelan*
    **SHAWN W. PHELAN**
    Texas Bar No. 00784758
    email: sphelan@thompsoncoe.com

    **THOMAS M. HORAN, II**
    Texas Bar No. 24063938
    email: thoran@thompsoncoe.com

**ATTORNEYS FOR INTERVENOR JEWELERS MUTUAL INSURANCE COMPANY**

## CERTIFICATE OF CONFERENCE

Mark Hammervold has attempted several times to confer with Brian Manookian on the merits of this Motion, including sending Mr. Manookian a copy of the Motion. However, despite these attempts Mr. Manookian has not responded. Accordingly, in accordance with Local Rule CV-7(i) the motion is opposed.

                                                    */s/ Mark Hammervold*
                                                    Mark Hammervold

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 23, 2020, a true and correct copy of the foregoing was filed and served electronically upon all counsel of record.

                                                    */s/ Carrie Johnson Phaneuf*
                                                    Carrie Johnson Phaneuf